FILED

2018 APR 13 PM 12:43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.

2:18 CV-243-FtM-99CM

ERIN MILLER,

    Plaintiff,

v.

MARLIN FINANCIAL, INC.,

    Defendant.

_____/

COMPLAINT AND TRIAL BY
JURY DEMAND

**NATURE OF ACTION**

1. This is an action brought under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. Part 1026 (collectively "TILA"), and Florida common law.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 15 U.S.C. § 1640(e), 28 U.S. Code § 1367, and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district.

**THE TRUTH IN LENDING ACT**

4. The TILA "has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer." *Travis v. Trust Co. Bank*, 621 F.2d 148, 151 (5th Cir. 1980); *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979); *Gardner &*

*N. Roofing & Siding Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 464 F.2d 838, 841 (D.C. Cir. 1972); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009).

5. The TILA is strictly enforced, and absolute compliance is necessary. *In re Porter*, 961 F.2d 1066, 1078 (3d Cir. 1992) ("A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent."); *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced."); *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976) ("[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability."); *see also Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801 (6th Cir. 1996); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986); *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982).

6. "[S]trict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements." *In re Brown*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989). Indeed, without strict compliance, the TILA's goals of standardized uniform disclosures would quickly be eroded. *See Reneau v. Mossy Motors*, 622 F.2d 192, 195 (5th Cir. 1980) ("The technical requirements of the TILA and Regulation Z must be strictly enforced if standardization of terms, permitting meaningful comparisons of available credit by consumers, is to be achieved.").

7. Creditors must make TILA disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 1026.17. If a creditor's disclosure is susceptible to more than one "plausible" interpretation, the creditor has not complied with the TILA. *See Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *In re Porter*, 961 F.2d 1066, 1077 (3d Cir. 1992).

8. This is because the "TILA neither requires nor encourages borrowers to guess or to assume that a disclosure has a particular meaning." *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 445 (5th Cir. 1982); *see also Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 372 (5th Cir. 1976) ("This court . . . is bound by the intent of Congress to eliminate the necessity of assumptions on the part of the consumer.").

9. The clarity of a creditor's disclosure is question of law, determined on an "ordinary consumer" standard. *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327–28 (7th Cir. 1999); *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978). Because this standard is objective, what a given consumer knows or does not know is immaterial when evaluating a creditor's TILA disclosures. *See Purtle*, 91 F.3d at 800; *Semar*, 791 F.2d at 704 (citing *Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir.1983).

## FRAUD UNDER FLORIDA COMMON LAW

10. Under Florida law, the essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and

3

(4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010) (citation and internal quotations omitted).

11. In certain circumstances, "[f]raud also includes the intentional omission of a material fact." *Ward v. Atl. Sec. Bank*, 777 So.2d 1144, 1146 (Fla. 3d DCA 2001).

12. In Florida, "a claim of fraud sufficient to justify a compensatory damage award is also sufficient to support a claim for punitive damages." *Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc.*, 522 So. 2d 1005, 1006 (Fla. Dist. Ct. App. 1988); *First Interstate Development Corp. v. Ablanedo*, 511 So.2d 536, 539 (Fla.1987).

13. "This is so because intentional misconduct is a necessary element of fraud." *Ablanedo*, 511 So.2d at 539.

14. Thus, in all cases of fraud the jury is empowered to award punitive damages. *Rappaport*, 522 So. 2d at 1006.

## PARTIES

15. Plaintiff, Erin Miller ("Plaintiff"), is a natural person who at all relevant times resided in the State of Florida, County of Charlotte, and City of Punta Gorda.

16. Defendant, Marlin Financial, Inc. ("Defendant"), is a Florida corporation which, at all relevant times, was engaged in the business of making high-interest auto title loans.

17. At all relevant times, Defendant, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable.

4

18. Defendant is a "creditor" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. 1026.2(17).

## FACTUAL ALLEGATIONS

19. Plaintiff is a 47-year old widow raising five children on her own. She served her country in Operation Desert Storm, and currently works sporadically as a certified nursing assistant.

20. Plaintiff's youngest child was born with Down syndrome, as well as congenital heart defects.

21. While she is eight years of age, due to her disabilities, she is the size of a three or four-year-old.

22. Due to her congenital heart defects, she tires easily and cannot walk for great distances.

23. As she is getting older, and is experiencing even more trouble getting around, Plaintiff sought to purchase a specialized mobility device to allow her daughter to move around more freely.

24. To that end, on or about April 25, 2017, Plaintiff contacted Defendant to inquire about obtaining a small personal loan of $3,200.00.

25. Because Defendant does not maintain physical branches, all of the discussions and communications with Defendant regarding the loan occurred via telephone and email.

26. In connection with the loan, Defendant sent Plaintiff a promissory note and associated documents (the "Contract") via an electronic document processing service, DocuSign.

27. Upon receiving the loan documents, Plaintiff discovered that Defendant had included GAP insurance (referred to in the documents as "debt cancellation coverage"), in the loan, and charged Plaintiff $4,000.00 for the insurance.

28. Plaintiff also discovered that several of the documents included in the loan specified that GAP insurance was voluntary.

29. Plaintiff did not wish to purchase GAP insurance, and certainly not for $4,000.00 on a loan of $3,200.00.

30. In fact, even at the 17.95% interest rate called for in Plaintiff's loan, had Plaintiff not purchased the $4,000.00 GAP insurance, the total liability she would face under the note would be around $3,594.02.

31. No consumer in their right mind would voluntarily purchase $4,000.00 insurance to insure against a loss of $3,594.02.

32. Accordingly, Plaintiff contacted Defendant to inquire about removing the GAP insurance from the loan, and Defendant's employee informed Plaintiff that the GAP insurance was required notwithstanding the statements to the contrary in Defendant's loan documents.

33. Seeing no other option, and understanding that GAP was required, notwithstanding the statements in the loan documents to the contrary, Plaintiff executed the loan documents on April 25, 2017.

34. A true and correct copy of the Contract is attached to this complaint as Exhibit A.

35. Plaintiff purchased GAP coverage based upon Defendant's representations that it was required in order to obtain financing.

36. Plaintiff would not have purchased GAP coverage but for Defendant's representation that it was required to obtain financing.

37. The Truth in Lending Disclosure statement provided to Plaintiff in connection with her loan disclosed an "annual percentage rate" of 17.923%, a "finance charge" of $1,444.07, and an "amount financed" of $3,200.00.

38. The "itemization of amount financed" disclosure reflects that Plaintiff purchased GAP coverage at a price of $4,000.00 and included that amount in the "amount financed."

39. Upon information and belief, Defendant earned a profit of several thousand dollars on the GAP insurance it sold to Plaintiff.

40. Upon information and belief, Defendant's employee that handled Plaintiff's transaction earned a substantial commission on the GAP insurance sold to Plaintiff.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1638(a)(2)

41. Plaintiff repeats and re-alleges each and every factual allegation above.

42. The Truth in Lending Act, 15 U.S.C. § 1605(a), 12 C.F.R. 1026.4(a) instructs that the Finance Charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

43. Under the TILA, add-on products like GAP insurance are finance charges, and must be disclosed as such, unless the product is voluntary, and the Creditor makes specific disclosures not at issue here. 12 C.F.R. § 1026.4(d).

7

44. In interpreting the TILA, special deference must be paid to the Federal Reserve Board's ("FRB") interpretation, because "Congress has specifically designated the [Federal Reserve] Board as the primary source for interpretation and application of the TILA . . . ." *Hess v. Citibank, (S. Dakota), N.A.*, 459 F.3d 837, 842 (8th Cir. 2006)).

45. Thus, "[u]nless demonstrably irrational, the Federal Reserve Board's interpretations are dispositive of TILA disputes." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 797, 63 L. Ed. 2d 22 (1980).

46. Moreover, if courts deviate from the strict interpretation of the TILA in search of a more "functional approach," the FRB takes action to overturn the court's decision. *See Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007) (explaining how the Seventh Circuit adopted a hyper technical approach to TILA in response to the FRB's efforts to upend its decision in *Carmichael v. Payment Ctr., Inc.*, 336 F.3d 636, 641 (7th Cir. 2003), and the FRB specifically identifying the court's decision as the impetus for its action).

47. The FRB, has declared the voluntariness of add-on products, like GAP insurance to be a factual issue ascertainable only "by reference to all of the circumstances of a particular transaction. Inquiry into these circumstances, of course, is not foreclosed by the presence of a customer's signature on an insurance authorization." Federal Reserve Board Staff Letter of December 20, 1977, No. 1270, Consumer Credit Guide (CCH) ¶ 31,756.

48. The FRB, in March 1978, elaborated on its guidance as follows:

> While the customer's signature on a document would be some evidence of voluntariness, of course, **it would not conclusively establish that the insurance was not required.** Any number of collateral acts or practices by a

> creditor could negate the apparently affirmative nature of the customer's election to purchase insurance.

Federal Reserve Board Staff Letter of March 21, 1978, 5 Cons. Cred. Guide (CCH) ¶31,777 (emphasis added).

49. In light of the FRB's guidance, recitals regarding voluntariness do not establish that a given product was voluntary. *See Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318, at *3 (E.D. Mich. Feb. 21, 2018); *Beltran v. USA Auto Inc.*, No. CV-14-02247-PHX-GMS, 2015 WL 12672084, at *2 (D. Ariz. Feb. 23, 2015) (citing cases); *Robinson v. Carport Sales & Leasing, Inc.*, No. 6:14-CV-1358-ORL-TBS, 2015 WL 224655, at *3 (M.D. Fla. Jan. 15, 2015) (GAP insurance could be compulsory despite contract stating GAP was voluntary); *Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 784 (S.D.W. Va. 1999) (credit life insurance could be required despite language to the contrary in contract); *In re Milbourne*, 108 B.R. 522, 541 (Bankr. E.D. Pa. 1989) ("if a lender does in fact misrepresent to customers that insurance is required, even though the loan contracts unequivocally state that the purchase of insurance is optional, a violation of UDAP and TILA could be established"); *Kaminski v. Shawmut Credit Union*, 494 F. Supp. 723, 729 (D. Mass. 1980) (credit life was not voluntary despite declaration to the contrary); *In re Cruz*, 441 B.R. 23, 33 (Bankr. E.D. Pa. 2004) (credit insurance was mandatory despite notation that it was optional); *Marine Midland Bank v. Burley*, 73 A.D.2d 1041, 1042, 425 N.Y.S.2d 429, 431 (1980); *Matter of Dickson*, 432 F. Supp. 752, 759 (W.D.N.C. 1977) ("whether the insurance was not required . . . of course, is not conclusively established by the statement on the disclosure that it was not required").

50. To prove that a product is actually compulsory despite contract language to the contrary, a "borrower is obliged to prove that (1) the lender affirmatively represented, by words

or by conduct, that [the product] was in fact required; and (2) as a result of the lender's actions, the borrower purchased [a product] that it is likely that (s)he would not have otherwise purchased. *In re Cruz*, 441 B.R. 23 (Bankr. E.D. Pa. 2004) (citing *In re Milbourne*, 108 B.R. 522, 542 (Bankr. E.D. Pa. (1989)).

51. Defendant's employee represented to Plaintiff that she had to purchase GAP insurance for her loan to be approved.

52. As a result of Defendant's employee's representations, Plaintiff purchased GAP insurance that she would not have purchased but for Defendant's employee's representations.

53. Because Defendant made purchase of GAP insurance a condition of credit, the TILA required the cost of the GAP coverage to be included as a finance charge in calculating the "amount financed," the "annual percentage rate," and the "finance charge" on the Contract.

54. Because Defendant did not include the cost of the GAP coverage in the "finance charge" in the Contract, Defendant therefore did not disclose the actual "finance charge" associated with the transaction in the Truth in Lending disclosures provided to Plaintiff.

55. Because Defendant did not include the amount paid for the GAP coverage in the "finance charge," Defendant therefore did not disclose the actual "finance charge expressed" as an "annual percentage rate" in the Truth in Lending disclosures provided to Plaintiff.

56. Because Defendant included the amount paid for the GAP coverage in the "amount financed," Defendant therefore did not disclose the actual "amount financed" in the Truth in Lending disclosures provided to Plaintiff.

57. Defendant violated 15 U.S.C. § 1638(a)(2) when it failed to accurately disclose the "amount financed" to Plaintiff.

58. Defendant violated 15 U.S.C. § 1638(a)(3) when it failed to accurately disclose the "finance charge" to Plaintiff.

59. Defendant violated 15 U.S.C. § 1638(a)(4) when it failed to accurately disclose the finance charge expressed as an "annual percentage rate" to Plaintiff.

60. The actual "annual percentage rate" on Plaintiff's loan was 118.14% not the 17.92% that Defendant had disclosed.

61. If Defendant had disclosed the true cost of the credit extended it extended to Plaintiff, she would not have accepted Defendant's credit offer.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. 1026.18(b);

b) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(3) and Regulation Z, 12 C.F.R. 1026.18(d);

c) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. 1026.18(e);

d) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1640(a)(2), in the amount of twice the finance charge;

e) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1640(a)(1);

f) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1640(a)(3);

g) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

h) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II
## FRAUD UNDER FLORIDA COMMON LAW

62. Plaintiff repeats and re-alleges each and every factual allegation above.

63. Defendant's employee represented to Plaintiff that she had to purchase GAP insurance in order for her loan to be approved.

64. Notwithstanding Defendant's employee's representation to the contrary, Plaintiff's loan documents advised that GAP insurance was not mandatory.

65. In reality, GAP insurance was not actually required for Plaintiff's loan to be approved, Defendant just represented to Plaintiff that it was required in order to sell her inordinately expensive insurance.

66. Defendant statement to Plaintiff that GAP insurance was required for her loan to be approved was a false statement concerning a material fact.

67. Defendant knew that GAP was not required for Plaintiff's loan to be approved.

68. Defendant intended that Plaintiff rely upon its representation that GAP was required for her loan to be approved, and purchase GAP insurance based on its representations about GAP insurance.

69. Plaintiff relied upon Defendant's representation that GAP was required for her loan to be approved and purchased GAP insurance for her loan of $3,200.00 at a cost of $4,000.00, which she financed at an interest rate of 17.92%.

70. Plaintiff would not have purchased GAP insurance but for Defendant's representation that it was required.

71. The fraudulent conduct carried on by Defendant, its agents, and employees was reckless and wanton and in total disregard of the rights of Plaintiff and was with expressed or implied maliciousness toward the Plaintiff, all to her damage and detriment

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

   a) Adjudging that Defendant defrauded Plaintiff;

   b) Awarding Plaintiff actual damages;

   c) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

   d) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

72. Plaintiff is entitled to and hereby demands a trial by jury.

Dated: April 10, 2018.

Respectfully submitted,

/s/ Alex D. Weisberg
Alex D. Weisberg
FBN: 0566551
Weisberg Consumer Law Group, PA
Attorneys for Plaintiff
5846 S. Flamingo Rd, Ste. 290
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax
aweisberg@afclaw.com

Correspondence address:
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618

Mesa, AZ 85206



# ATTACHMENT(S)

# NOT

# SCANNED

___ Exceeds scanner's page limits
___ Physical exhibit prevents scanning
_X_ Other: Exhibits — Contains Personal Identifier

**\*\*PLEASE REFER TO COURT FILE\*\***